NOT FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER

Electronically Filed
Intermediate Court of Appeals
CAAP-15-0000643
23-APR-2018
10:47 AM

NO. CAAP-15-0000643

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

STATE OF HAWAI'I, Plaintiff-Appellee,
v.
MARLIN L. LAVOIE, Defendant-Appellant

APPEAL FROM THE CIRCUIT COURT OF THE SECOND CIRCUIT
(CR. NO. 13-1-0236(3))

MEMORANDUM OPINION
(By: Leonard, Presiding Judge, Reifurth and Ginoza, JJ.)

Defendant-Appellant Marlin L. Lavoie (**Lavoie**) appeals from a Judgment, Conviction and Sentence entered on August 13, 2015 in the Circuit Court of the Second Circuit (**circuit court**).[1] Lavoie was convicted of: Murder in the Second Degree in violation of Hawai'i Revised Statutes (**HRS**) § 707-701.5 (2014)[2] subject to HRS § 706-656 (1993 & Supp. 2013); Carrying or Use of Firearm in the Commission of a Separate Felony in violation of HRS § 134-

---

[1] The Honorable Joseph E. Cardoza presided.

[2] HRS § 707-701.5 provides:

> **[§707-701.5] Murder in the second degree.** (1) Except as provided in section 707-701, a person commits the offense of murder in the second degree if the person intentionally or knowingly causes the death of another person.
> (2) Murder in the second degree is a felony for which the defendant shall be sentenced to imprisonment as provided in section 706-656.

21(a) (2011);[3] Ownership or Possession Prohibited of Any Firearm or Firearm Ammunition (**Count III** or **felon-in-possession**) in violation of HRS §§ 134-7(b) and (h) (2011);[4] and Place to Keep Loaded Firearms Other than Pistols and Revolvers (**Count IV** or

---

[3]   HRS § 134-21(a) provides:

> [§134-21]  **Carrying or use of firearm in the commission of a separate felony; penalty.**  (a) It shall be unlawful for a person to knowingly carry on the person or have within the person's immediate control or intentionally use or threaten to use a firearm while engaged in the commission of a separate felony, whether the firearm was loaded or not, and whether operable or not; provided that a person shall not be prosecuted under this subsection when the separate felony is:
>
> (1)   A felony offense otherwise defined by this chapter;
> (2)   The felony offense of reckless endangering in the first degree under section 707-713;
> (3)   The felony offense of terroristic threatening in the first degree under section 707-716(1)(a), 707-716(1)(b), or [707-716(1)(e)]; or
> (4)   The felony offenses of criminal property damage in the first degree under section 708-820 or criminal property damage in the second degree under section 708-821 and the firearm is the instrument or means by which the property damage is caused.

[4]   HRS §134-7(b) and (h) provide:

> §134-7  **Ownership or possession prohibited, when; penalty.**
>
> . . . .
>
> (b) No person who is under indictment for, or has waived indictment for, or has been bound over to the circuit court for, or has been convicted in this State or elsewhere of having committed a felony, or any crime of violence, or an illegal sale of any drug shall own, possess, or control any firearm or ammunition therefor.
>
> . . . .
>
> (h) Any person violating subsection (a) or (b) shall be guilty of a class C felony; provided that any felon violating subsection (b) shall be guilty of a class B felony. Any person violating subsection (c), (d), (e), (f), or (g) shall be guilty of a misdemeanor.

2

**place-to-keep**) in violation of HRS § 134-23(a) (2011).[5]

On appeal, Lavoie argues that the circuit court erred when it: (1) instructed the jury on Lavoie's affirmative defense of extreme mental or emotional disturbance (**EMED**) and permitted an instruction on self-control, but did not, *sua sponte*,[6] instruct the jury on the definition of EMED; (2) did not, *sua sponte*,[7] provide a jury instruction on pathological intoxication based on testimony that Lavoie may have been suffering from symptoms of low blood sugar at the time of the shooting; (3) did not provide the jury with an instruction on the merger doctrine

---

[5] HRS § 134-23(a) provides:

> **[§134-23] Place to keep loaded firearms other than pistols and revolvers; penalty.** (a) Except as provided in section 134-5, all firearms shall be confined to the possessor's place of business, residence, or sojourn; provided that it shall be lawful to carry unloaded firearms in an enclosed container from the place of purchase to the purchaser's place of business, residence, or sojourn, or between these places upon change of place of business, residence, or sojourn, or between these places and the following:
> (1) A place of repair;
> (2) A target range;
> (3) A licensed dealer's place of business;
> (4) An organized, scheduled firearms show or exhibit;
> (5) A place of formal hunter or firearm use training or instruction; or
> (6) A police station.
> "Enclosed container" means a rigidly constructed receptacle, or a commercially manufactured gun case, or the equivalent thereof that completely encloses the firearm.

[6] Lavoie acknowledges that his defense counsel did not request an EMED definition. However:

> it is the duty of the circuit judge to see to it that the case goes to the jury in a clear and intelligent manner, so that they may have a clear and correct understanding of what it is they are to decide, and he or she shall state to them fully the law applicable to the facts[.]

State v. Adviento, 132 Hawai'i 123, 137, 319 P.3d 1131, 1145 (2014) (quoting State v. Hoey, 77 Hawai'i 17, 38-39, 881 P.2d 504, 525-526 (1994) (quotation marks, brackets, and citations omitted)).

[7] Lavoie again acknowledges that defense counsel did not request this instruction at trial or object to the court's failure to give it. However, Adviento applies. Adviento, 132 Hawai'i at 137, 319 P.3d at 1145.

for Counts III and IV;[8] (4) gave a limiting instruction on bad acts evidence which erroneously provided that such evidence went towards determining Lavoie's intent in the charged offenses; and (5) held that defense counsel opened the door to Hawai'i Rules of Evidence (**HRE**) Rule 404(b) evidence of Lavoie's prior bad acts.

Lavoie also argues that he was deprived of effective assistance of counsel because his trial attorney: (1) failed to, in pursuance of Lavoie's EMED and insanity defenses, present evidence from Lavoie's father, Edward Lavoie (**Edward**), and Lavoie's acquaintance, Kaipo Poepoe (**Kaipo**); (2) failed to hire an investigator to follow up with witnesses; and (3) failed to request that the circuit court bar the State's use of bad acts evidence for failure to provide HRE Rule 404(b) notice.

For the reasons stated below, we affirm.

## I.   Background

On March 20, 2013, Lavoie shot and killed his longtime girlfriend, Malia Kahalewai (**Kahalewai**), with a rifle. Kahalewai died at the scene. Following the shooting, Lavoie drove to his father's house where he resided, spent the night, and turned himself in to the police the next day.

Prior to trial, Lavoie stipulated that he was a convicted felon at the time of the shooting. The circuit court also granted Lavoie's motion in limine, which sought to exclude evidence of Lavoie's prior criminal record and any other prior bad acts. Lavoie and the State agreed, however, that if the door were opened at trial, the State could pursue evidence of Lavoie's prior bad acts.

During opening arguments, defense counsel asserted, *inter alia*, Lavoie's EMED defense.

As part of its case-in-chief, the State called several of Kahalewai's friends and/or acquaintances to testify. These

---

[8] Defense counsel did not object to the court failing to instruct the jury on merger at the time of trial, but did file a "Motion to Compel State to Dismiss Count 3 or 4 Due to Merger" on August 10, 2015 after the verdict.

witnesses included Nicole Aea (**Aea**), Barbara Haliniak (**Barbara**), Alexis Haliniak (**Alexis**), and Jaimie Maikui (**Maikui**).

During defense counsel's cross-examination of Aea, Aea testified, *inter alia*, that Kahalewai and Lavoie "had plenty of arguments" over the course of their eight- to nine-year relationship. Further, defense counsel asked to approach the bench during cross-examination of Aea at which time he stated:

> Judge, there was a motion in limine about what we're calling potential prior bad acts and what's been defined as what could be conceivably construed as a prior bad act is that the decedent leaving my client in the aftermath of arguments for some period of time. So I want to get into that area with this witness now, that after arguments throughout their relationship, there were periods of separation, where [Kahalewai] would distance herself from the family for days or weeks.

The prosecutor replied that this would "open the door" to why Kahalewai would leave, to which defense counsel replied, "[t]hat may be the case." Defense counsel then proceeded with his cross-examination of Aea.

Aea further testified during cross-examination about arguments between Lavoie and Kahalewai, Kahalewai's leaving Lavoie following those arguments for a period of days to over a week at a time, and that, as of the night of the shooting, Kahalewai had left Lavoie for approximately four days. Aea also described the interaction between Lavoie and Kahalewai immediately prior to the shooting.

After Aea's cross-examination, a bench conference was held during which the prosecutor asserted that the defense had opened the door to Lavoie's prior bad acts, namely past arguments with Kahalewai involving abuse by Lavoie and then Kahalewai leaving to get away from Lavoie. The circuit court held that

> Because [the defense's] line of questioning has suggested that [Kahalewai's] departure caused a reaction which caused [Lavoie] to lose control of his thoughts and his actions, ultimately it's going to be for the trier of fact to determine whether or not, from the defendant's standpoint, if he's been inflicting abuse on [Kahalewai], whether it would be reasonable, from his standpoint, to then become upset or enraged by her departure, such that it would mean that the -- that defense would be a viable one. And then there's the whole 704 issues [sic].

> So I do think that the door has been opened in a
> variety of layers or levels.

After further discussion with counsel, the circuit court noted that it would allow evidence regarding Lavoie's objection to Kahalewai socializing with others. On re-direct examination of Aea and later direct examination of Barbara, Alexis, and Maikui, the State elicited further testimony regarding incidents where: Aea testified that in 2007, after Kahalewai had stayed away overnight to help prepare for a friend's funeral, Lavoie threatened Kahalewai and Aea while holding a gardening pick axe; Barbara testified that in 2012, during a poker game at her house, Lavoie had been sleeping, and when he woke he was very upset that Kahalewai did not wake him to play, punched a wooden beam and tried to grab Kahalewai but was blocked by another person; Alexis testified that in 2012, at an apartment building where she was living, she heard Kahalewai yelling, saw Lavoie with his hands around Kahalewai's neck, and Alexis's boyfriend had to go down and stop the incident; and Maikui testified that on March 16, 2013, four days before the shooting incident, Maikui and Kahalewai were driving to pick up food for a bachelorette party when they saw Lavoie coming into town, he followed them, and after they parked on the side of the road Lavoie reached into their car to grab the key, Lavoie elbowed Kahalewai and hit Maikui, and Maikui hit Lavoie.

At the close of the State's case-in-chief, the circuit court gave a limiting instruction to the jury on the use the prior bad acts evidence, stating:

> Ladies and gentlemen of the jury, you have heard
> evidence during this trial that the defendant, Marlin
> Lavoie, at another time may have engaged in or committed
> other crimes, wrongs or acts. This evidence, if believed by
> you, may be considered only on the issue of the defendant's
> intent to commit the offenses charged in this case.

During the defense's case-in-chief, defense counsel called three mental health expert witnesses who each had diagnosed Lavoie with some type of mood disorder or mental

defect. One expert witness additionally testified that Lavoie's not eating before the shooting contributed to his actions.

Lavoie's father, Edward, was also called to testify about Lavoie's behavior immediately following the shooting.

At the close of trial, the circuit court's instructions to the jury included its instruction on EMED and Jury Instruction 36 regarding self-control. Lavoie's counsel objected to Jury Instruction 36,[9] which stated: "The question of the defendant's self control or the lack of it, at the time of the offense is a significant factor in deciding whether he was under the influence of extreme mental or emotional disturbance." Defense counsel argued that this instruction "unnecessarily highlights and isolates this aspect of the law to the jury by including it in an instruction."

Prior to its deliberations, the circuit court further instructed the jury regarding the prior bad acts evidence that:

> During this trial, you have heard evidence that the defendant at other times may have engaged in or committed other crimes, wrongs or acts. This evidence, if believed by you, may be considered only on the issue of defendant's intent to commit the offenses charged in this case. Do not consider this evidence for any other purpose. You must not use this evidence to conclude that because the defendant, at other times, may have engaged in or committed other crimes, wrongs or acts, that he is a person of bad character and, therefore, must have committed the offenses charged in this case.

The jury found Lavoie guilty as charged after one day of deliberations. Following the verdict, the circuit court granted defense counsel's motion to withdraw and appoint substitute counsel, and denied Lavoie's "Motion to Compel State to Dismiss Count III or Count IV Due to Merger."

The circuit court subsequently entered its "Judgment Conviction and Sentence." Lavoie's timely appeal followed.

---

[9] Jury Instruction 36 had been the State's proposed instruction #13.

## II. Standard of Review

### A. Plain error

Plain error may be recognized "when the error committed affects substantial rights of the defendant." State v. Cullen, 86 Hawai'i 1, 8, 946 P.2d 955, 962 (1997) (citation omitted).

### B. Jury instructions not objected to at trial

In the case of an unrequested jury instruction on a defense raised for the first time on appeal:

> HRS § 701-115(2) [(1993)] and its accompanying Commentary place the burden of production on the defendant to present evidence of the specified fact or facts going to the defense. In other words, the defendant must have come forward at trial with credible evidence of facts constituting the defense, unless those facts were supplied by the prosecution's witnesses. Further, "credible evidence" in this context means that the circuit court should have concluded, based on the record that existed at trial, that the evidence "offered reasonable grounds for being believed," i.e., that "a reasonable juror could harbor a reasonable doubt" as to the defendant's guilt, and should have given the unrequested . . . jury instruction. Failure to give the . . . jury instruction under these circumstances constitutes plain error.
>
> . . . .
>
> [S]uch an error "seriously affects the fairness, integrity, or public reputation of judicial proceedings," and it would "serve the ends of justice" and "prevent the denial of fundamental rights" to address [it]. [State v.] Kikuta, 125 Hawai'i[ 78,] 95, 253 P.3d[ 639,] 656 [(2011) (citation omitted)]. . . . . [W]here the omission of the . . . jury instruction constitutes plain error, it shall be a basis for reversal of the defendant's conviction only if an examination of the record as a whole reveals that the error was not harmless beyond a reasonable doubt.

State v. Taylor, 130 Hawai'i 196, 207-08, 307 P.3d 1142, 1153-54 (2013) (footnotes omitted).

For jury instructions that were not objected to at trial, the Hawai'i Supreme Court explained in State v. Nichols, 111 Hawai'i 327, 141 P.3d 974 (2006), that:

> although as a general matter forfeited assignments of error are to be reviewed under the [Hawai'i Rules of Penal Procedure (HRPP)] Rule 52(b) plain error standard of review, in the case of erroneous jury instructions, that standard of review is effectively merged with the HRPP Rule 52(a) harmless error standard of review because it is the duty of

> the trial court to properly instruct the jury. As a result, once instructional error is demonstrated, we will vacate, without regard to whether timely objection was made, if there is a reasonable possibility that the error contributed to the defendant's conviction, *i.e.*, that the erroneous jury instruction was not harmless beyond a reasonable doubt.

Id. at 337, 141 P.3d at 984 (footnote omitted). Thus, the appellant must first demonstrate instructional error by rebutting the "presumption that unobjected-to jury instructions are correct[.]" Id. at 337 n.6, 141 P.3d at 984 n.6; accord State v. Eberly, 107 Hawai'i 239, 250, 112 P.3d 725, 736 (2005). If the appellant is able to rebut this presumption, the burden shifts to the State to prove that the error was harmless beyond a reasonable doubt, because:

> [e]rroneous instructions are presumptively harmful and are a ground for reversal unless it affirmatively appears from the record as a whole that the error was not prejudicial. However, error is not to be viewed in isolation and considered purely in the abstract. It must be examined in the light of the entire proceedings and given the effect which the whole record shows it to be entitled.

Nichols, 111 Hawai'i at 334, 141 P.3d at 981 (brackets in original omitted) (quoting State v. Gonsalves, 108 Hawai'i 289, 293, 119 P.3d 597, 601 (2005)).

### C. Admissibility of prior bad acts evidence

> By its plain language, [HRE] Rule 404(b) generally prohibits the admission of other crimes, wrongs, or acts, which negatively impacts a defendant's character or shows propensity to commit a crime. Evidence of other crimes, wrongs, or acts may, however, be admissible for other purposes when relevant to an issue in a case, *e.g.*, to show "motive, opportunity, intent, preparation, plan, knowledge, identity, modus operandi, or absence of mistake or accident."

State v. Fetelee, 117 Hawai'i 53, 80-81, 175 P.3d 709, 736-737 (2008); HRE Rule 404(b).

> "Prior bad act" evidence under HRE Rule 404(b) is admissible when it is 1) relevant and 2) more probative than prejudicial. A trial court's determination that evidence is "relevant" within the meaning of HRE Rule 401 is reviewed under the right/wrong standard of review. However, a trial court's balancing of the probative value of prior bad act evidence against the prejudicial effect of such evidence under HRE Rule 403 is reviewed for abuse of discretion. An

9

> abuse of discretion occurs when the court clearly exceeds the bounds of reason or disregards rules or principles of law to the substantial detriment of a party litigant.

State v. Behrendt, 124 Hawai'i 90, 102, 237 P.3d 1156, 1168 (2010) (brackets and ellipses omitted) (citing Fetelee, 117 Hawai'i at 62-63, 175 P.3d at 718-19).

### D. Ineffective assistance of counsel

The proper standard for claims of ineffective assistance of counsel is whether, when "viewed as a whole, the assistance provided was within the range of competence demanded of attorneys in criminal cases." Dan v. State, 76 Hawai'i 423, 427, 879 P.2d 528, 532 (1994) (internal brackets, citation, and quotation marks omitted). Furthermore:

> [g]eneral claims of ineffectiveness are insufficient and every action or omission is not subject to inquiry. Specific actions or omissions alleged to be error but which had an obvious tactical basis for *benefitting* the defendant's case will not be subject to further scrutiny. If, however, the action or omission had no obvious basis for benefitting the defendant's case *and* it "resulted in the withdrawal or substantial impairment of a potentially meritorious defense," then it will be evaluated as information that an ordinarily competent criminal attorney should have had.

Id. (brackets and internal ellipses omitted, emphasis in original) (quoting Briones v. State, 74 Haw. 442, 462-63, 848 P.2d 966, 976 (1993)). "[M]atters presumably within the judgment of counsel, like *trial strategy*, will rarely be second-guessed by judicial hindsight." State v. Richie, 88 Hawai'i 19, 39-40, 960 P.2d 1227, 1247 (1998) (internal citation and quotation marks omitted, emphasis in original).

### III. Discussion

#### A. Jury instructions

##### 1. EMED

Lavoie argues that the EMED instruction given to the jury was prejudicially incomplete because it included an instruction on self-control but the circuit court did not, *sua*

*sponte*, provide a definition of EMED -- extreme mental or emotion disturbance.

We conclude that State v. Haili, 103 Hawai'i 89, 79 P.3d 1263 (2003) is dispositive. In Haili, the Hawai'i Supreme Court rejected the defendant's assertion that jury instructions related to the EMED defense were erroneous because the instructions did not define "extreme mental or emotional disturbance." Id. at 107-09, 79 P.3d at 1281-83. Moreover, the jury instructions in Haili regarding EMED contained an almost identical instruction regarding "self-control" as Jury Instruction 36 in this case. Id. at 107, 79 P.3d at 1281. The court in Haili noted that "EMED" was not defined by the legislature, and, accordingly, the courts need not define the term in their jury instructions. Id. at 108, 79 P.3d at 1282. Instead, jurors should give the phrase its plain meaning. Id. at 108-109, 79 P.3d at 1282-1283 (citing, *inter alia*, Roise v. State, 7 S.W.3d 225, 242 (Tex. App. 1999) (holding that "[i]f a phrase, term, or word is statutorily defined, the trial court should submit the statutory definition to the jury. . . . Words that are not statutorily defined are to be given their common, ordinary, or usual meaning.")).

Furthermore, although HRS § 707-702(2) (2014)[10] does not refer to "self-control," Hawai'i courts have repeatedly recognized that it is a significant factor in EMED defense

---

[10]  HRS § 707-702(2) (2014) titled "Manslaughter" provides:

> (2) In a prosecution for murder or attempted murder in the first and second degrees it is an affirmative defense, which reduces the offense to manslaughter or attempted manslaughter, that the defendant was, at the time the defendant caused the death of the other person, under the influence of extreme mental or emotional disturbance for which there is a reasonable explanation. The reasonableness of the explanation shall be determined from the viewpoint of a reasonable person in the circumstances as the defendant believed them to be.

11

determinations. State v. Aganon, 97 Hawaiʻi 299, 304, 36 P.3d 1269, 1274 (2001), State v. Sawyer, 88 Hawaiʻi 325, 333, 966 P.2d 637, 645 (1998).

Based on the foregoing, Lavoie has not demonstrated that the court erred by failing to define EMED for the jury. Nichols, 111 Hawaiʻi at 337 n.6, 141 P.3d at 984 n.6.

**2. Pathological intoxication**

Lavoie argues that the circuit court erred by failing, *sua sponte*, to provide a jury instruction on pathological intoxication pursuant to HRS § 702-230 due to evidence from his medical expert that he may have been suffering from symptoms of low blood sugar.[11]

"Pathological intoxication" is defined as "intoxication grossly excessive in degree, given the amount of the intoxicant, to which the defendant does not know the defendant is susceptible and which results from a physical abnormality of the defendant." HRS § 702-230(5). Moreover, "intoxication" is defined as "a disturbance of mental or physical capacities resulting from the introduction of substances into the body." Id. (Emphasis added.).

In this case, Lavoie contends there is evidence he may have suffered low blood sugar from not eating, which may have compounded the factors preventing him from controlling himself and behaving in a way that would be expected. However, Lavoie's refraining from eating is the opposite of "the introduction of substances into the body," which is required under the definition of "pathological intoxication" and "intoxication". Cf. State v. Eager, 140 Hawaiʻi 167, 169, 398 P.3d 756, 758 (2017) (ruling that the "circuit court's holding that [defendant's] failure to take his medication caused his psychotic behavior is inconsistent

---

[11] Lavoie again acknowledges that defense counsel did not request this instruction at trial or object to the court's failure to give it. But see Adviento, 132 Hawaiʻi at 137, 319 P.3d at 1145.

with the plain language of [HRS § 702-230(5)] which requires the introduction of substances into the body." (Emphasis in original)).

Because no basis existed for a pathological intoxication instruction, the circuit court did not err in failing to provide it. Adviento, 132 Hawai'i at 137, 319 P.3d at 1145, Nichols, 111 Hawai'i at 337 n.6, 141 P.3d at 984 n.6.

### 3.  Merger

Lavoie argues that the circuit court erred in not giving a jury instruction on merger for Counts III and IV because the jury was required to determine if there were distinct facts to constitute the separate offenses,[12] pursuant to HRS § 701-109(1)(e) (2014).[13]

Hawai'i case law indicates that felon-in-possession and place-to-keep charges are often intertwined, in turn necessitating a merger instruction. State v. Padilla, 114 Hawai'i 507, 517, 164 P.3d 765, 775 (App. 2007) (holding that felon-in-possession and place-to-keep charges would, "in virtually every instance, be entitled to merger instruction . . . because both offenses would intrinsically arise out of the same

---

[12]  Defense counsel did not object to the court failing to instruct the jury on merger at the time of trial, but did file a "Motion to Compel State to Dismiss Count 3 or 4 Due to Merger" on August 10, 2013 after the verdict.

[13]  HRS § 701-109(1)(e) (2014) provides:

> §701-109  Method of prosecution when conduct establishes an element of more than one offense.  (1) When the same conduct of a defendant may establish an element of more than one offense, the defendant may be prosecuted for each offense of which such conduct is an element. The defendant may not, however, be convicted of more than one offense if:
>
> . . .
>
> > (e) The offense is defined as a continuing course of conduct and the defendant's course of conduct was uninterrupted, unless the law provides that specific periods of conduct constitute separate offenses.

13

conduct and attendant circumstances.") (quoting State v. Matias, 102 Hawaiʻi 300, 306 n.10, 75 P.3d 1191, 1197 n.10 (2003)).

However, in circumstances akin to this case, we have held that a merger instruction was not necessary. See State v. Stangel, No. CAAP-13-0003941, 2015 WL 836928 (Hawaiʻi App. Feb. 26, 2015) cert. denied, SCWC-13-0003941 (Haw. Jul. 9, 2015). In Stangel, the defendant fired multiple shots at motorists and was charged with, *inter alia*, Place to Keep in violation of HRS § 134-25 and several other firearm-related charges. Id. at *1. Relying on HRS § 701-109(1)(e), Stangel argued that the circuit court erred in failing to give a merger instruction to the jury as to whether his firearms charges constituted separate and distinct culpable acts or were an uninterrupted continuous course of conduct. Id. at *8.

> This court held:
>
> > [Place to Keep] is not defined as a continuing course of conduct; it is a prohibition against transporting firearms. Once the person takes the firearm out of a place of business, residence, or sojourn—but for certain exceptions—the offense is complete. The fact that the offense may continue beyond this point does not change the character of the offense.
> >
> > . . . .
> >
> > Stangel committed the offense of Place to Keep when he left his home with the loaded firearm. That he continued to have the firearm during the entire episode of June 3, 2011 and committed other offenses with that same firearm was not necessary to the commission of the Place to Keep offense. As Place to Keep is not defined by statute as a continuing course of conduct offense, HRS § 701-109(1)(e), the Circuit Court was not required to instruct the jury to decide whether Stangel engaged in an uninterrupted course of conduct as a matter of fact.

Id. at *10. This court additionally noted that Stangel's citation to Matias and Padilla was not persuasive, because he completed commission of the offense of Place to Keep "as soon as he left his residence with the firearm and without a permit. His subsequent actions in committing each of the underlying felonies in each of the Use of Firearm offenses were therefore separate from the Place to Keep offense." Id. at *10, n.11.

14

In the instant case, Lavoie purchased his rifle two years before transporting it to shoot Kahalewai.[14] The circuit court explained at trial:

> The evidence in this case demonstrated that the defendant had purchased the firearm in question several years before the incident in question and was still in possession of that weapon prior to leaving his home on the date of the offenses charged. The defendant then transported that firearm to the scene of the murder, used the firearm in the commission of the offense, then left the area with the firearm, and returned it to an area adjacent to where he resided.
> In the Court's view, the offense of felon in possession, even if restricted to the day in question, had been committed before the defendant had ever left his home, and the carrying -- the place to keep loaded firearms, that offense occurs with the firearm being loaded and then transporting it in a place other than his place of business, residence, or sojourn, and transporting it after the commission of a homicide.

We agree with the circuit court's analysis. Thus, the circuit court did not err in failing to provide a merger instruction with regard to Counts III and IV.

### 4. HRE Rule 404(b) evidence usage

Lavoie argues that the circuit court's instruction on prior bad acts evidence at the close of the State's case-in-chief was improper because it "advised the jury that the bad acts evidence can be circumstantial evidence to determine whether intent is proven."[15]

"By its plain language, [HRE] Rule 404(b) generally prohibits the admission of other crimes, wrongs, or acts, which negatively impacts a defendant's character or shows propensity to commit a crime." Fetelee, 117 Hawai'i at 80, 175 P.3d at 736. HRE Rule 404(b) does, however, permit prior bad acts evidence if it is probative of another fact that is of consequence to the

---

[14] A witness testified at trial that he sold the rifle to Lavoie on February 17, 2011, and that Lavoie took possession of the rifle that day. The shooting incident occurred on March 20, 2013.

[15] Lavoie did not object to this instruction at trial. But see Adviento, 132 Hawai'i at 137, 319 P.3d at 1145.

determination of the action, such as proof of intent. <u>See also</u> Addison M. Bowman, Hawai'i Rules of Evidence Manual § 403-2G at 4-54 (2016-17 ed.)

Furthermore, the circuit court also gave Jury Instruction 21 at the end of trial:

> During this trial, you have heard evidence that the defendant at other times may have engaged in or committed other crimes, wrongs or acts. This evidence, if believed by you, <u>may be considered only on the issue of defendant's intent to commit the offenses charged in this case. Do not consider this evidence for any other purpose</u>. You must not use this evidence to conclude that because the defendant, at other times, may have engaged in or committed other crimes, wrongs or acts, that he is a person of bad character and, therefore, must have committed the offenses charged in this case.
>
> In considering the evidence for the limited purpose for which it has been received, you must weigh it in the same manner as you would all other evidence in this case and consider it along with all other evidence in this case.

(Emphasis added.)

Jury Instruction 21 limited the jury's use of Lavoie's prior bad acts evidence in compliance with HRE Rule 404(b). Any ambiguity created by the prior limiting instruction was therefore cured. <u>See</u> <u>State v. Acker</u>, 133 Hawai'i 253, 278, 327 P.3d 931, 956 (2014).

## B. HRE Rule 404(b) evidence

Lavoie argues the circuit court erred in allowing the prosecution to introduce evidence of his prior bad acts, in contravention of HRE Rule 404(b).[16] We conclude that Lavoie's

---

[16] As to the prior bad acts evidence, Lavoie argues in his opening brief that the circuit court erred because:

> The trial court allowed witnesses to testify about prior incidents of alleged bad acts that included: in 2007, Lavoie holding a gardening pick axe in his hand and saying to [Kahalewai] and witness Nicole Aea, "nobody going to find you, you guys."; Witness Alexis Haliniak testifying that in 2012 she saw defendant yell and threaten [Kahalewai] at a poker game, and that another instance saw defendant with his hands around [Kahalewai's] neck and throat squeezing it; witness Jamie Maikui testified that 4 days before [Kahalewai's] death, defendant reached into the car when

(continued...)

16

various arguments on this issue are not persuasive.

### 1. Opening the door on cross-examination

Lavoie argues that the circuit court erred in ruling that defense counsel opened the door to prior bad acts evidence following cross-examination of Aea.

Defense counsel informed the court at a bench conference that in his forthcoming cross-examination of Aea he wanted to address the area that had previously been described in a motion in limine as Lavoie's prior bad acts. After the prosecutor noted that such examination would "open the door," defense counsel stated "[t]hat may be the case." Defense counsel then subsequently questioned Aea about arguments between Lavoie and Kahalewai during the course of their relationship, and about Kahalewai leaving Lavoie for periods of time following such arguments. Prior to the State's re-direct examination of Aea, the circuit court held that defense counsel had opened the door to such evidence, because defense counsel's line of questioning was relevant to Lavoie's EMED defense. The circuit court explained:

> [b]ecause [defense counsel's] line of questioning has suggested that [Kahalewai's] departure caused a reaction which caused [Lavoie] to lose control of his thoughts and his actions, ultimately it's going to be for the trier of fact to determine whether or not, from the defendant's standpoint, if he's been inflicting abuse on [Kahalewai], whether it would be reasonable, from his standpoint, to then become upset or enraged by her departure, such that it would mean that the -- that defense would be a viable one.

Given the record in this case and Lavoie's reliance on the EMED defense, we conclude the circuit court did not err in ruling that the defense opened the door for the State to introduce the prior bad acts evidence.

---

[16](...continued)
    [Kahalewai] was parked and a struggle ensued where witness and [Kahalewai] got struck by defendant.

(Internal citations omitted.)

### 2. Motion in limine

Lavoie argues that there was "no specific indication as to why" the circuit court disregarded its prior order on the motion in limine barring evidence of Lavoie's prior bad acts.

At the hearing on Lavoie's motion in limine, the circuit court noted that such motions are "preliminary in nature and subject to the manner in which the record develops during trial." Both the State and defense counsel agreed that if Lavoie opened the door to evidence of his prior bad acts, the State could request to pursue such evidence despite the motion. At trial, defense counsel opened the door. Thus, the circuit court was not barred from allowing the prior bad acts evidence notwithstanding Lavoie's prior motion in limine.

### 3. HRE Rule 404(b) notice

Lavoie argues that the prior bad acts evidence was admitted in error because the State did not comply with the HRE Rule 404(b) notice requirement.

Hawai'i and other jurisdictions have held that HRE Rule 404(b) notice may be excused if (1) the opposing party opens the door to the otherwise inadmissible evidence on cross-examination, and (2) the proponent did not intend to use that evidence prior to trial. State v. Oshiro, CAAP-11-0000043, 2013 WL 5823772 at *4 (Hawai'i App. Oct. 30, 2013); see also Commonwealth v. Mineau, 77 Mass. App. Ct. 1123, 933 N.E.2d 1033 (2010) (holding that defense counsel could open the door on cross-examination of the complaining witness to evidence barred by a motion in limine); Espinoza v. State, 969 P.2d 542 (Wyo. 1998) (holding that a defendant may open the door on cross-examination to evidence of prior bad acts barred by a pretrial motion in limine, and that the prosecution may pursue such evidence on re-direct without the required notice).

18

In the instant case, defense counsel opened the door to the prior bad acts evidence. Therefore, the circuit court did not err in admitting the prior bad acts evidence without notice from the State.

### 4. HRE Rule 404(b) evidence to establish intent

Lavoie argues that his prior bad acts were material to neither his murder nor his firearms charges, and thus were not properly brought up during the State's case-in-chief.

HRE Rule 404(b) permits prior bad acts evidence if it is relevant to, among other things, intent. In State v. Maelega, the Hawai'i Supreme Court held that testimony about defendant's spousal abuse was admissible because it could provide proof of, inter alia, defendant's motive, intent, and plan, and serve to rebut his EMED defense to his second-degree murder charge. 80 Hawai'i 172, 183–184, 907 P.2d 758, 769–770 (1995). At trial, the prosecution argued that defendant's feeling of losing control over his wife inspired the killing, not a loss of self-control stemming from the disturbance of discovering an affair. Id. To support its theory, the State elicited testimony from several individuals describing defendant's domestic abuse and control over his wife. Id. at 175, n.3, 907 P.2d at 761, n.3. The Hawai'i Supreme Court held that the circuit court applied the appropriate analysis in determining whether to admit the prior bad acts evidence and did not abuse its discretion in doing so. Id. at 184, 907 P.2d at 770.

Pursuant to Maelega, evidence of Lavoie's prior bad acts was relevant to rebut Lavoie's EMED defense because those acts were probative of Lavoie's intent.

### 5. HRE Rule 403

Lavoie argues that the circuit court failed to conduct HRE Rule 403 analyses on the evidence of his prior bad acts. Lavoie specifically challenges the testimony of two witnesses: Aea and Alexis.

19

Before re-direct examination of Aea when the State sought to elicit testimony about Lavoie's bad acts, the circuit court evaluated: (1) the State's offer of proof detailing Aea's knowledge; (2) defense counsel's counter-arguments regarding the probative value of Aea's knowledge, the lack of corroboration, and the incident in 2007 being so prejudicial it should be excluded; and (3) the State's rebuttal. The circuit court held that Aea could testify about certain incidents because her knowledge was relevant to (1) Lavoie's EMED defense, and (2) Kahalewai's reasons for leaving him. The court also precluded Aea from testifying as to certain other incidents.

The circuit court also considered both the State's and defense counsel's arguments about Alexis' testimony, and found that Alexis' testimony carried "significant probative value concerning the reasonableness of the [EMED] explanation." The circuit court also held that, contrary to Lavoie's argument, Alexis' testimony was within an acceptable temporal range from the date of the shooting.

The circuit court found Aea and Alexis' testimony as to certain incidents to be relevant. The circuit court considered the arguments of counsel, including as to potential prejudice. Absent an abuse of discretion, which we conclude does not exist here, we will not disturb the circuit court's ruling. Behrendt, 124 Hawai'i at 102, 237 P.3d at 1168.

### 6. Burden shifting

Lavoie argues that admitting prior bad acts evidence during the State's case-in-chief impermissibly shifted the burden onto him to prove his own innocence.

At the close of his opening argument, however, defense counsel explicitly stated that the evidence will "show that due to his extreme emotional disturbance, [Lavoie] cannot be convicted of murder." Given the reliance on the EMED defense

from the start, and the defense opening the door during its cross-examination of Aea, the circuit court did not shift the burden of proof in this case.

### C. Ineffective assistance of counsel

#### 1. Witnesses Edward and Kaipo

Lavoie argues that he was denied effective assistance of counsel because his attorney did not elicit testimony about Lavoie's actions immediately following the shooting from witnesses Edward and Kaipo. Lavoie argues such testimony would have been relevant to his EMED and insanity defenses, based on "[e]xperts [who] testified that the conduct of defendant at around and after the time of the shooting is especially important to evaluate the scope, degree and extent of his mental illness/disorder."

The Hawai'i Supreme Court has held:

[i]f counsel does not adequately investigate the underlying facts of a case, including the availability of prospective defense witnesses, counsel's performance cannot fall within the 'wide range of reasonable professional assistance.' This is because a decision not to investigate cannot be considered a tactical decision. It is only after an adequate inquiry has been made that counsel can make a reasonable decision to call or not to call particular witnesses for tactical reasons.

State v. Aplaca, 74 Haw. 54, 71, 837 P.2d 1298, 1307 (1992) (citing State v. Templin, 805 P.2d 182, 188 (Utah 1990)). However, "[t]he decision whether to call witnesses in a criminal case is normally a matter within the judgment of counsel and, accordingly, will rarely be second-guessed by judicial hindsight." Richie, 88 Hawai'i at 40, 960 P.2d at 1248. Furthermore, "[i]neffective assistance of counsel claims based on the failure to obtain witnesses must be supported by affidavits or sworn statements describing the testimony of the proffered witnesses." Id. at 39, 960 P.2d at 1247.

Both Edward and Kaipo were subpoenaed by the defense to appear on June 2, 2015 at trial. On June 3, 2015, the defense called Edward to testify and he testified briefly regarding

Lavoie's demeanor following the shooting. Defense counsel did not call Kaipo to testify. With regard to Lavoie's contentions on appeal as to areas in which Edward or Kaipo could have testified that would have benefitted the defense, it does not appear that the record on appeal contains any affidavit or declarations from either Edward or Kaipo regarding such potential testimony. We note that Lavoie's current counsel did not serve as his trial counsel and was appointed after the circuit court had entered its Judgment, Conviction and Sentence. Thus, Lavoie's current counsel had no opportunity to obtain affidavits or declarations from Edward or Kaipo while the case was pending in the circuit court such that they would be part of this record. Moreover, without such information, Lavoie's trial counsel had no meaningful opportunity to address Lavoie's claim that he provided ineffective assistance of counsel.

Inasmuch as the record on appeal does not support Lavoie's ineffective assistance of counsel claim with affidavits or sworn statements, his claim fails on direct appeal. However, the Hawai'i Supreme Court has expressed that:

> not every trial record is sufficiently developed to determine whether there has been ineffective assistance of counsel; indeed, a defendant is often only able to allege facts that, if proved, would entitle him or her to relief. Therefore, we hold that where the record on appeal is insufficient to demonstrate ineffective assistance of counsel, but where: (1) the defendant alleges facts that if proven would entitle him or her to relief, and (2) the claim is not patently frivolous and without trace of support in the record, the appellate court may affirm defendant's conviction without prejudice to a subsequent Rule 40 petition on the ineffective assistance of counsel claim.

State v. Silva, 75 Haw. 419, 439, 864 P.2d 583, 592-93 (1993) (footnote omitted). Pursuant to Silva, our ruling is without prejudice to Lavoie filing a petition under Rule 40 of the Hawai'i Rules of Penal Procedure (HRPP) as to his claim of ineffective assistance of trial counsel related to testimony that he asserts should have been presented by Edward and Kaipo.

### 2. Investigator

Lavoie argues, without supporting authority, that a "criminal defendant has the right to have an investigator help in the preparation or the defense of his case." Lavoie next argues that defense counsel's failure to hire an investigator to "follow up with witnesses" was in error because an investigator "could have located witness statements to help with [Lavoie's] defense and related claims."

First, Lavoie's argument fails to demonstrate substantial impairment to his defense. See Dan, 76 Hawai'i at 427, 879 P.3d at 532 (citations omitted).

Second, while conducting zero pretrial investigation would fall outside the range of reasonable professional assistance, that is not the case here. See Aplaca, 74 Haw. at 71, 837 P.2d at 1307. Defense counsel subpoenaed ten witnesses and called several to testify, in addition to more rebuttal witnesses. Electing not to further investigate Lavoie's case or hire an investigator was within defense counsel's tactical discretion. Lastly, in accordance with Richie, it does not appear from the record that Lavoie obtained affidavits or sworn statements describing the testimony that might have been obtained if his counsel had hired an investigator. See Richie, 88 Hawai'i at 39, 960 P.2d at 1247 (holding that, absent affidavits or sworn statements by potential witnesses, the record lacked reliable evidence indicating what certain witnesses would have testified to, and thus could not support defendant's claim of ineffective assistance of counsel).

Similar to our ruling above, Lavoie has not established his ineffective assistance of trial counsel claim in this direct appeal. However, our ruling is without prejudice to Lavoie filing a petition under HRPP Rule 40 as to his claim of ineffective assistance of trial counsel related to potential witnesses that could have been located if trial counsel had

23

retained an investigator. See Silva, 75 Haw. at 439, 864 P.2d at 592-93.

### 3. HRE Rule 404 notice

Lavoie argues that defense counsel erred by failing to request that the circuit court bar the State's use of bad acts evidence for failure to file HRE Rule 404(b) notice.[17]

Trial counsel is "not required to make futile objections merely to create a record impregnable to assault for claimed inadequacy of counsel." State v. Antone, 62 Haw. 346, 351, 615 P.2d 101, 106 (1980) (citation, ellipses, and quotation marks omitted). In the instant case, HRE Rule 404(b) notice was not required for admission of Lavoie's prior bad acts. Therefore, Lavoie was not denied effective assistance of trial counsel on this basis.

## IV. Conclusion

Based on the above, the Judgment, Conviction and Sentence entered on August 13, 2015 in the Circuit Court of the Second Circuit is affirmed, without prejudice to a subsequent HRPP Rule 40 petition as to Lavoie's claim of ineffective assistance of trial counsel as set forth above.

DATED: Honolulu, Hawaiʻi, April 23, 2018.

Matthew S. Kohm,
for Defendant-Appellant.

Renee Ishikawa Delizo,
Deputy Prosecuting Attorney,
for Plaintiff-Appellee.

Presiding Judge

Associate Judge

Associate Judge

---

[17] At trial, defense counsel only objected to the bad acts evidence on the basis that the door had not been opened.